## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GARY P. DECICCO,<br><br>Defendant. | Case No. 17-cr-10092-NMG |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARY P. DECICCO'S MOTION FOR DISCOVERY OF EXCULPATORY EVIDENCE AND BILL OF PARTICULARS

### I.      INTRODUCTION

The government charges Defendant Gary P. DeCicco with Hobbes Act extortion, relying on a makeshift string of unreliable informants and ignoring crucial evidentiary gaps.  DeCicco is preparing several substantial, interrelated lines of defense for trial.  The government possesses evidence that would support DeCicco's defense, but – in violation of Local Rules 116.1-116.2 and Brady v. Maryland, 373 U.S. 83 (1963) – the government is refusing to produce that evidence to DeCicco.

The exculpatory evidence that DeCicco seeks includes primarily:  (a) information regarding promises, rewards, and inducements made to potential witnesses; (b) evidence that would directly negate Mr. DeCicco's guilt; and (c) Title III materials that the government may use for cross-examination, rebuttal, or any other purpose.  In addition, Mr. DeCicco moves that the government provide a bill of particulars providing the date, time, location, and participants of certain conversations.  These items are detailed further in the Motion and below.

## II.   BACKGROUND

**1.   Expected Trial Evidence**

Mr. DeCicco expects that the evidence at trial will show the following.

Mr. DeCicco and CW-1 were neighbors for many years, on a small cul-de-sac in Nahant. There was substantial animosity between them. This animosity grew over time. CW-1 criticized many aspects of Mr. DeCicco's business and lifestyle. He criticized the cars Mr. DeCicco purchased. Mr. DeCicco was dating a much younger woman, who had formerly worked for CW-1's dealership. CW-1 told other people that the woman attached herself to wealthier men who would take care of her. CW-1 also had made a vulgar and insulting proposition about a woman close to Mr. DeCicco.

CW-1 was serving as an informant to the Internal Revenue Service (IRS) about Mr. DeCicco, and he discussed this fact with people outside of the government.

One person who associated with both CW-1 and Mr. DeCicco describes them as being akin to high school girls who continually criticize each other. Another witness describes CW-1 as being obsessed and competitive with Mr. DeCicco, and envious of Mr. DeCicco's seemingly greater affluence. The government will claim that, in turn, Mr. DeCicco did various acts to insult CW-1, and to demean CW-1's ownership of the used-car dealership.

CW-1 was assaulted in January 2015. The government conceded at Mr. DeCicco's detention hearing, as the Court may well remember, that all three persons involved in coordinating and performing the assault (CW-2, CW-3, and CW-4) understood that the assault's purpose was to punish CW-1 for his insults to one or more women. All three individuals were unaware of anyone, including Mr. DeCicco, having an interest in CW-1's used-car dealership. During the assault, CW-2 made a comment to CW-1 about CW-1's treatment of a woman, but made no reference to a dealership.

CW-1 appears to have been cooperating with the Federal Bureau of Investigation (FBI) and the IRS as an informant for years prior to the January 2015 assault. See ECF No. 33-1 (Elio Aff.) ¶ 5; Ex. 6 (Saugus Police Dep't Rep.) at 7. Yet he failed to record a single conversation with Mr. DeCicco in which CW-1 was extorted. Given how easy it would have been for CW-1 to commence and tape a conversation with Mr. DeCicco, either before or after the assault, the absence of such a taped conversation shows how weak the government's case is.

Mr. DeCicco had a close personal friendship with another car dealer who had a much larger and more successful dealership than CW-1's shop. Their children had gone to school together and were friends. Mr. DeCicco and this second dealer had been friends for years, and Mr. DeCicco had bought and sold cars through this man. Consequently, Mr. DeCicco had no need to be involved in CW-1's dealership. CW-1 and the second dealer were antagonistic, and there would be no logic to Mr. DeCicco becoming involved with CW-1's dealership and spoiling his long-term friendship and business relationship with the second dealer.

## 2. Discovery Dispute

On May 26, 2017, the government sent its automatic discovery letter to Mr. DeCicco. Ex. 1. In response, on June 12, 2017, Mr. DeCicco made various specific requests for exculpatory information in the government's possession. Ex. 2.

On June 26, 2017, the government responded, producing some routine materials but withholding the vast majority of the exculpatory information Mr. DeCicco had requested. Ex. 3. The government represented that it had fulfilled its Local Rule 116.2(b) disclosure requirements in its initial automatic discovery letter. Id. at 2. The government did not address any of the other specific requests for exculpatory information that Mr. DeCicco had presented. The government also made no representation that it did not possess the additional information Mr. DeCicco had requested.

On July 5, 2017, the Government sent a second response to Mr. DeCicco's June letter, in which it provided additional exculpatory information from a potential government witness. Ex. 4.  In the same letter, the government specifically denied that it possessed certain information responsive to Local Rule 116.2(b), but it did not respond to the remainder of Mr. DeCicco's requests.

Because the government has failed to comply with its automatic discovery obligations under the Local Rules and <u>Brady</u>, Mr. DeCicco moves the Court to compel the government to produce materials it should have produced voluntarily.  Additional details regarding the categories of information that the government has failed to produce are discussed below.

### III.     LEGAL STANDARD

Local Rule 116.2 requires the government, as part of its automatic discovery, to disclose "information that would tend directly to negate the defendant's guilt concerning any count in the indictment or information," and to identify any "promise, reward, or inducement" made to witnesses expected to be called in the government's case-in-chief.  L.R. 116.2(b)(1)(A), (C). The Local Rules characterize such information as subsets of <u>Brady</u> material, namely "exculpatory information . . . that is material and favorable to the accused."  L.R. 116.2(a); <u>see</u> <u>Brady</u>, 373 U.S. at 87 (defendants have a right to "favorable" evidence that is "material either to guilt or punishment").

Under <u>Brady</u>, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).  The significance of the evidence must be "sufficient to undermine confidence in the outcome."  <u>Id.</u>  In the pretrial context, however, "materiality is largely in the eye of the beholder," <u>Daughtry v. Dennehy</u>, 946 F. Supp. 1053, 1059 n.2 (D. Mass. 1996), and "[a] determination of the materiality of information helpful

to the defendant may be more difficult to make reliably . . . than post-conviction."[1]  Where there

is doubt as to whether the evidence should be disclosed, the government must err on the side of

disclosure.  United States v. Snell, 899 F. Supp. 17, 22 n. 11 (D. Mass. 1995).

## IV.   ARGUMENT

### 1.    Written Immunity Agreements

The government has taken the position that it is not required to produce all written

immunity agreements.  After extensive written and oral debates with DeCicco, and four weeks

after certifying to the Court that it had already provided all automatic discovery, the government

finally produced three immunity agreements, all the while claiming that it was not "required to

provide the actual immunity agreements and order."  Ex. 3 (Gov't June Letter) at 2.

Local Rule 116.2(b)(1)(C) requires the government provide the defense with "a copy of

any promise, reward, or inducement reduced to writing" by a date established by the Court.  In

this case, that date was May 26, 2017.  By their very nature, written immunity and cooperation

agreements are distillations of promises, rewards, or inducements to potential government

witnesses.[2]  Mr. DeCicco therefore seeks production of all immunity and cooperation

agreements, both now and on a continuing basis.

---

[1] Report of the Judicial Members of the Committee Established to Review and Recommend
Revisions of the Local Rules of the United States District Court for the District of Massachusetts
Concerning Criminal Cases 18-19 (October 28, 1998).  See also United States v. Safavian, 233
F.R.D. 12, 16 (D.D.C. 2005) (explaining that the materiality standard "discussed in . . . appellate
cases . . . in the post-conviction context . . . is not the appropriate one for prosecutors to apply
during the pretrial discovery phase"); United States v. Danielczyk, No. 11-cr-85, 2013 WL
142460, at *2 (E.D. Va. Jan. 10, 2013) (same).

[2] If the government does not acknowledge that it has an obligation to provide such basic
documents as written immunity agreements of potential government witnesses as "promises,
rewards, and inducement," one wonders what, if anything, the government considers to be its
obligation under Local Rule 116.2(b)(1)(C).

2.      **Other Promises, Rewards, or Inducements**

In addition to the three agreements that the government produced in June, Mr. DeCicco renews his request for <u>any</u> promises, rewards, or inducements made to <u>any</u> potential government witnesses. L.R. 116.2(b)(1)(C). This request encompasses, but is not limited to, CW-1, CW-2, CW-3, and CW-4. <u>See</u> Ex. 2 (DeCicco Disc. Resp.) at 2. Any promises, rewards, or inducements related to the government's main cooperating witnesses is both material and favorable to the defense within the meaning of the Local Rules and <u>Brady</u>.

This case rests on the government's ability to link Mr. DeCicco, through a chain of cooperating witnesses, both to the assault on CW-1 and to an intent to extort CW-1 for a share of his car dealership. Mr. DeCicco will hotly contest both of these links at trial.

The government's theory runs as follows: Mr. DeCicco asked CW-4 to find someone to assault CW-1; CW-4 asked CW-3 to find such an assailant on Mr. DeCicco's behalf; CW-3 identified CW-2, and asked him to attack CW-1 on behalf of CW-1's Nahant neighbor; finally, CW-2 actually assaulted CW-1. <u>See</u> ECF No. 33-1 (Elio Aff.). CW-1 also claims that Mr. DeCicco arranged the assault in order to extort him, and that Mr. DeCicco had expressed to CW-1 on previous occasions that he wanted a share of the car dealership. <u>See</u> Ex. 5 (Lemanski Aff.) ¶¶ 5-7, 14-22.

Any promises, rewards, or inducements made by the government to the witnesses in this theoretical chain could call into question their respective motivations for implicating Mr. DeCicco in the assault, or for ascribing to Mr. DeCicco a desire to obtain an interest in the car dealership. Such information is both material and favorable to Mr. DeCicco's defense. Similar considerations apply to information regarding other witnesses that the government intends to call, including both individuals that the government has mentioned to DeCicco and those that the government has not yet disclosed.

6

The government has a duty to disclose any such promises, rewards, or inducements.  Its obligations are not limited to written immunity agreements and orders.  Courts have held that promises, rewards, or inducements may include, among other things:  financial compensation, United States v. Hastings, 847 F.2d 920, 922 (1st Cir. 1988); promises made during proffer sessions that are not reduced to writing, United States v. Delgado, No. 03-cr-30008, 2004 U.S. Dist. LEXIS 11536, at *3 (D. Mass. June 17, 2004); and even "statement[s] to a witness that he or she has a minor role and is not a subject for investigation or a target for potential prosecution," United States v. Buendo, No. 88-cr-39, 1988 U.S. Dist. LEXIS 18245, at *13 (D. Mass. Oct. 14, 1988).

It is clear that the government has not disclosed all promises, rewards, and inducements in this case.  The two government witnesses who were indisputably involved in the assault on CW-1 are CW-2 and CW-3.  Both men are felons with records for drugs and violence.  See Ex. 1 (Gov't May Letter) at 5; Ex. 5 (Lemanski Aff.) ¶¶ 14, 17.  The government has not charged these hardened convicts with extortion, and they face no state assault charges for their actions.  There is clearly some understanding or tacit bargain between the government and these witnesses.  The government should memorialize and produce whatever it has said to these two men to persuade them to testify at trial.  Any threats of prosecution, promises not to prosecute, or assurances to speak on the witness' behalf with law enforcement amount to discoverable inducements.

The government should likewise be required to produce any government statements dissuading potential witnesses from cooperating or communicating with defense counsel. All such statements "would be highly useful to defense counsel and would clearly be brought out on cross-examination as tending to impeach the witness."  Buendo, 1988 U.S. Dist. LEXIS 18245,

at *14.  Mr. DeCicco is entitled to know about any government efforts to dissuade witnesses from cooperating with his defense.

Mr. DeCicco also seeks disclosure of any available information regarding the benefits provided to CW-1 by virtue of his informant roles with both the IRS and the FBI.  CW-1 was a government informant from 2006 to 2011, when the government discontinued using him.  ECF No. 33-1 (Elio Aff.) ¶ 5.  The government reactivated CW-1 in July 2015.  Id.  He has apparently been providing information against Mr. DeCicco both for this case and for the IRS's tax investigation of Mr. DeCicco.  See ECF No. 18 (Mar. 22, 2017 Hr'g Tr.) at 61-62.

CW-1's interests as an informant are wide-ranging.  He informed against a former employee with whom he had a financial dispute, by telling the Nahant police that the employee was connected to the highest levels of Al Qaeda.  Ex. 6 (Saugus Police Dep't Rep.) ¶ 14.  CW-1 also reported to the government about conversations he had with another individual, a defendant in the failed Casino Land prosecution, whom the government claims has a felony record and criminal associations.  See ECF No. 18 (Mar. 22, 2017 Hr'g Tr.) at 61-62.

The government's prosecution of Mr. DeCicco for extortion will rise or fall on how credible the jury finds CW-1's claims regarding the subject of his dispute with Mr. DeCicco.  CW-1 will need to persuade the jury that the dispute concerned an interest in a used-car dealership, rather than CW-1's resentment and jealousy toward Mr. DeCicco, who was more successful, and who was dating a younger woman who had spurned CW-1's advances.  Given CW-1's rich career as an informant, combined with the crucial weight of his personal credibility, any information relating to promises, rewards, or inducements from the government to CW-1 is key exculpatory evidence.

The exculpatory value of inducements or rewards to CW-1 is not limited to inducements or rewards tied specifically to CW-1's testimony in the instant prosecution.  According to multiple witnesses, the relationship between CW-1 and Mr. DeCicco grew increasingly antagonistic over an extended period of time, and for reasons unrelated to CW-1's car dealership. By the time Mr. DeCicco was charged with extortion, the government had been investigating him for years in connection with potential tax issues.  See Ex. 5 (Lemanski Aff.) ¶ 24. CW-1 provided information for that investigation as well.  Against this backdrop, all promises, rewards, or inducements related to CW-1's multifaceted engagement as FBI informant establish a motive for CW-1 to testify in aid of federal charges against Mr. DeCicco.

Part of Mr. DeCicco's defense will be that CW-1 has manipulated his status and relationships as an informant to convert a personal conflict with Mr. DeCicco into a federal case. This line of defense will be supported by the fact that CW-1 has engaged in similar behavior toward other individuals.  In addition to the incidents mentioned earlier, such as CW-1's accusations regarding his ostensibly Al Qaeda-related former salesman, Mr. DeCicco has uncovered other situations in which CW-1 threatened to use, or actually tried to use, his ties to law enforcement for purposes of spiting others he begrudged.  Mr. DeCicco therefore asks that the Government be compelled to disclose all information regarding CW-1's informing to any agency about Mr. DeCicco, all information about any instances in which CW-1 disclosed to individuals outside the government that he was acting as an informant, and all information about all situations in which CW-1 informed against people with whom he had personal or business conflicts.

With respect to all potential government witnesses, the government must reveal quid-pro-quo statements or inducements even if they "involve[d] other sovereigns," such as state

authorities. <u>United States</u> v. <u>Owens</u>, 933 F. Supp. 76, 87 (D. Mass. 1996). The telegraphic kind

of disclosures that the government provided in its May letter, *see* Ex. 1, will not do. "As a

general matter, it is not adequate to disclose such information in generic terms." <u>Snell</u>, 899 F.

Supp. at 22. The defense must have the opportunity to "put[] the information in context, [and]

determin[e] its significance in the particular case." <u>Id.</u> Mr. DeCicco asks that the Court order

the government to disclose information sufficiently comprehensive to satisfy its Local Rule

116.2(b)(1)(C) obligations in full.

**3.     Information that Would Tend to Negate the Defendant's Guilt**

Mr. DeCicco also renews his discovery requests seeking information that would tend

directly to negate Mr. DeCicco's guilt. <u>See</u> L.R. 116.2(b)(1)(A); Ex. 2 (DeCicco Disc. Resp.) at

3. Mr. DeCicco's requests relate directly to several interrelated lines of defense:

- That Mr. DeCicco never intended to extort CW-1 for a part of CW-1's car dealership, because Mr. DeCicco was never interested in owning that business. Multiple witnesses have provided statements to this effect. <u>See</u> Ex. 3 (Gov't June Letter) at 5; Ex. 4 (Gov't July Letter) at 2.

- That the dispute between Mr. DeCicco and CW-1 was not about the car dealership, but about a woman. The statements of CW-2, CW-3, and CW-4 support this claim. <u>See</u> ECF No. 33-1 (Elio Aff.) ¶¶ 18, 19, 21; Ex. 5 (Lemanski Aff.) ¶ 20.

- That while Mr. DeCicco had no motive to extort CW-1 – even based on CW-1's own statements – there were other individuals who did have the motive and means to harass and assault CW-1. <u>See, e.g.</u>, Ex. 6 (Saugus Police Dep't Rep.) ¶ 14.

Any information supporting these defense theories directly supports Mr. DeCicco's

absence of guilt in this extortion case. Mr. DeCicco's automatic discovery requests specifically

asked the government provide information in its possession, from all sources, that is relevant to

any of these plausible theories. See <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995) (under <u>Brady</u>,

the "prosecutor has a duty to learn of any favorable evidence known to the others acting on the

government's behalf in the case").  The Court should require the government to comply with Mr. DeCicco's requests.

Among the evidence that would tend to negate Mr. DeCicco's guilt is evidence of other individuals with motives to attack or otherwise harm CW-1.  The evidence will show that CW-1 was a highly antagonistic person.  CW-1 threatened former employees and others that he would turn them in to the federal authorities.  He had a long-running feud with members of the Nahant Knights of Columbus, a fraternal organization located near his residence.  He also engaged in recurring disputes with the Nahant police.

Accordingly, Mr. DeCicco seeks evidence that any individuals or organizations other than Mr. DeCicco had a motivation to arrange an attack on CW-1.  The government has declined to produce this information "this far in advance of trial," essentially on the theory that the information would not support a viable defense.  See Ex. 4 (Gov't July Letter) at 2.  The government thus intends to withhold Brady material until just before trial, denying Mr. DeCicco adequate time to investigate the information and use it effectively at trial.  The Court should reject the government's tactics and order it to produce the requested information without delay.

**4.    Title III Intercepts**

The government has stated that it does not intend to use any existing Title III intercepts in its case-in-chief.  See Ex. 3 (Gov't June Letter) at 1.  Accordingly, the government theorizes that it need not produce Title III materials to Mr. DeCicco, because Mr. DeCicco does not need to determine whether to seek suppression of any intercepts.  But the government is being cute, because it refuses to confirm that it will not use any intercepts for purposes of cross-examination or rebuttal.  Id.

The government unquestionably possesses Title III intercepts relating to Mr. DeCicco.  In the failed Casino Land prosecution, the government produced Title III materials showing that

Mr. DeCicco was intercepted in some innocuous conversations about cars and motorcycles.  Mr. DeCicco is entitled to the full range of intercepted conversations in which he, or CW-1, or others participated, and that support Mr. DeCicco's lines of defense.  In particular, recorded conversations that disclose CW-1's animosity toward Mr. DeCicco, for whatever reason, are exculpatory, and should be produced.

**5.      Members of the Prosecution Team**

In addition to the FBI and IRS, the Massachusetts State Police have been active in the investigation of Mr. DeCicco, particularly in connection with CW-4 and likely other cooperating witnesses.  The Saugus Police, and possibly the Nahant Police, may have participated as well.  Thus, Mr. DeCicco asks that the Court order the government to specify which law enforcement agencies are addressed by the government's automatic discovery letters, and which agencies assisted in the investigation but were omitted from the government's disclosures.  Mr. DeCicco is entitled to know how the government is interpreting its discovery obligations.

**6.      Bill of Particulars**

Notwithstanding the evidence of personal conflict between Mr. DeCicco and CW-1, the government's case is likely to feature a gaping hole:  The government will present no evidence that Mr. DeCicco ever actually threatened CW-1 with "physical violence" if  CW-1 would not give Mr. DeCicco an interest in the used-car dealership; and no evidence that Mr. DeCicco actually committed "physical violence" for that purpose.  See 18 U.S.C. § 1951.  In fact, Mr. DeCicco expects the evidence to show that he never made an extortionate demand on CW-1.  The government is trying to infer extortion from an ordinary personality conflict.

Accordingly, Mr. DeCicco seeks a bill of particulars describing all conversations or acts in which, according to the government, Mr. DeCicco actually demanded an economic interest from CW-1, or threatened violence to secure such an interest.  Mr. DeCicco needs this

information for, among other purposes, preparing a possible alibi defense.  Because the

Indictment does not describe any such acts or conversations, it does not "convey[] sufficient

information to properly identify the allegedly unlawful conduct." United States v. Hallock, 941

F.2d 36, 40 (1st Cir. 1991).  A bill of particulars is therefore warranted.

## V.   CONCLUSION

For the foregoing reasons, the Court should allow the Motion and grant the relief

described in it.

Respectfully submitted,

GARY P. DECICCO,

By his counsel,

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra I. Gliga (BBO # 694959)
alexandra.gliga@whitecase.com
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9300

## CERTIFICATE OF SERVICE

I, Michael Kendall, hereby certify that the above document was filed on the date
appearing in the header of this page through the ECF system, which will send true copies of the
document to the attorneys of record for each party.

/s/ Michael Kendall
Michael Kendall
