# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,

v.

GARY P. DECICCO,

     *Defendant*.

_____

)
)
)
)
)
)
)
)
)
)

No. 17-CR-10092-NMG

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR ISSUANCE OF A
## RULE 17(c) SUBPOENA RETURNABLE BEFORE TRIAL

Defendant Gary DeCicco submits this memorandum of law in support of his Motion for

Issuance of Fed. R. Crim. P. 17(c) Subpoenas *Duces Tecum* to MarJam Supply Company

("MarJam").  The proposed subpoenas seek documents and information that relate to a number

of the events which are the basis for the charge of attempted extortion in violation of 18 U.S.C. §

1951.  The documents sought are relevant, admissible, and narrowly targeted, satisfying the

three-part showing required by Rule 17(c) and *United States v. Nixon*, 418 U.S. 683, 699-800

(1974), and its progeny.  Mr. DeCicco seeks leave to issue the proposed subpoenas because they

call for the requested documents and information to be returned prior to trial, specifically by May

25, 2018.

## RELEVANT FACTS

Prior to the charge in this case, Mr. DeCicco and CW-1 lived side-by-side as neighbors

for over 15 years.  The Indictment charges Mr. DeCicco with one count of attempted extortion in

violation of the Hobbs Act, 18 U.S.C. § 1951.  Dkt No. 23.  It alleges that from 2013 through

January 11, 2015, Mr. DeCicco unlawfully "attempted to obtain an interest in [CW-1's]

automobile dealership from [CW-1] with his consent, induced by wrongful use of actual and

threatened force, violence, and fear." Dkt No. 23.  The government's theory is, in sum and

substance, that in 2013, Mr. DeCicco requested to become CW-1's partner in the operation of the

automobile dealership, Auto Excellence Group; CW-1 later rejected Mr. DeCicco's overture; Mr.

DeCicco responded by sending CW-1 a delivery of flowers, a cross, a note, and pizza, as well as

making threatening and harassing calls in August 4-6, 2014; and Mr. DeCicco subsequently

arranged for CW-1 to be assaulted on January 11, 2015.  *See* Dkt. No. 3-1.

    During the investigation and prosecution of this case against Mr. DeCicco, CW-1 has

stated to law enforcement, and testified in the grand jury, that Mr. DeCicco first asked to be

partners with him in Auto Excellence Group sometime during the dealership's construction,

which took place from the fall of 2013 until approximately June 2014.  CW-1 has stated that he

was in frequent contact with Mr. DeCicco in at least the first quarter of 2014 because he "needed

DeCicco's help with construction advice, paving and dealing with Peter Varone," his general

contractor.  Exhibit 1, Confidential Human Source ("CHS") Report dated April, 12, 2018.  CW-1

has also admitted to discussing financing with Mr. DeCicco before the construction of Auto

Excellence Group was complete, stating that he was running low on cash and was having trouble

paying his invoices, which would include those owed to MarJam, one of the construction

materials suppliers for Auto Excellence Group.  The evidence will show that as disputes with his

contractors mounted over his short-payment of their invoices, CW-1 became aggressive and

abusive to them, requiring Mr. DeCicco to mediate several of these disputes himself.  On August

8, 2014, MarJam filed a Notice of Contract on August 8, 2014 against Sahar LLC and Auto

Excellence Group, stating that the contract price for materials and services was $36,619.73, they

had received $27,048.43, and were owed $9,571.30, two months after Auto Excellence Group

opened for business.

2

At trial, the defense will show that Mr. DeCicco *never* requested to be CW-1's business partner.  To the contrary, Mr. DeCicco, a real estate developer with longstanding relationships with many of the Auto Excellence Group contractors, had numerous persuasive reasons to avoid any type of business relationship with CW-1, including that CW-1 had unsatisfactory working relationships with contractors and would regularly cheat them—including contractors with whom Mr. DeCicco regularly did business and were friendly.  This directly undercuts the government's theory that Mr. DeCicco wanted to be associated with CW-1 or tainted with CW-1's reputation.

## LEGAL ANALYSIS

Fed. R. Crim. P. 17(c) requires a defendant seeking pretrial return of documents from a non-party to show (1) the requested documents are evidentiary and relevant; (2) the requested documents are not otherwise obtainable reasonably in advance of trial by exercise of due diligence; (3) he cannot properly prepare for trial without inspecting such documents in advance of trial and that the failure to obtain such inspection may tend to unreasonably delay the trial; and (4) the application is made in good faith and is not a general "fishing expedition." *Nixon*, 418 U.S. 683, 699-700; *United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir. 1988). Mr. DeCicco's proposed subpoenas satisfy all of these criteria.

### A. The Requested Records Are Evidentiary and Relevant to the Defendant's Defense.

Mr. DeCicco requests the following documents through a subpoena *duces tecum* to be returnable before trial:

(1)     invoices, payments, and communications regarding payments (or lack thereof) relating to materials supplied for the construction of Auto Excellence Group at 173 Main Street, Saugus, MA from June 1, 2013 – August 8, 2014; and

(2)     the documents relied on to prepare and file the Notice of Contract filed August 8,

2014 filed against Sahar LLC and Auto Excellence Group.

The requested business records and documents are relevant to disprove that Mr. DeCicco ever

desired or attempted to obtain an interest in Auto Excellence Group.  Documentation of the non-

payment of contractors and subcontractors during the construction of Auto Excellence Group

would tend to undercut the government's theory of why Mr. DeCicco committed the allegedly

extortionate acts because, among other things, Mr. DeCicco would not want to assume a

partnership or ownership stake in CW-1's business because he knew that Auto Excellence Group

was not a sustainable business model and had multiple outstanding claims against it arising out

of non-payment of contractors.  Mr. DeCicco's knowledge of these events and claims can be

shown from CW-1's testimony that he discussed his disputes with contractors with Mr. DeCicco;

Mr. DeCicco also was close friends with Peter Varone, the general contractor, who oversaw the

construction project itself.

Importantly, the requested business records and documents are relevant in light of the

government's recent production of CW-1's witness statements that reflect his anticipated trial

testimony, which Mr. DeCicco has a right to confront and cross-examine.  In a CHS Report

dated March 28, 2017, CW-1 stated that "[a]ll the subcontractors that worked at the Auto

Excellence Group got paid except for the individual that worked on the elevator."  Exhibit 2.

The requested documents comprise evidence that CW-1 rebuts this falsehood.

Any records obtained would be admissible at trial under the hearsay exception for

business records, Fed. R. Evid. 803(6), or authenticated through live witnesses during trial, Fed.

R. Evid. 901.  Accordingly, the requested information is necessary to adequately prepare for the

defense of this matter and would be admissible at trial.

**B.      The Defendant is Unable to Procure These Records in Advance of Trial.**

Despite discovery requests on this topic, the government has not produced the records sought by the Subpoena and it is Mr. DeCicco's understanding that the government is not in possession, custody, or control of the requested business records and documents.  A Rule 17(c) subpoena, seeking return before trial, is the only way that Mr. DeCicco can obtain the requested business records and documents prior to trial.

**C.      Inspection and Review in Advance of Trial is Necessary.**

Mr. DeCicco needs the requested documents in advance of his trial in order to make appropriate use of them and to prepare for his defense.  Any records and documents obtained by the Subpoena may be relatively voluminous, and will some need to be reviewed and analyzed. Additionally, it is possible the record custodians will object to producing the requested records, which may require additional motion practice. Accordingly, Mr. DeCicco submits that production of the records in advance of trial is necessary in order for him to be able to make productive use of them at trial and so as to not unnecessarily delay the trial.

**D.      The Defendant Has a Good Faith Basis to Seek the Requested Documents and the Request is Not a Fishing Expedition.**

This request is not a fishing expedition; rather Mr. DeCicco has a good faith basis to believe that the requested records exist and are relevant to the defense based on investigation and review of discovery produced by the government.  The Subpoena is narrowly tailored to a discrete 14-month timeframe within the relevant time period during MarJam's interaction with CW-1 in the context of the construction of Auto Excellence Group, targets only records pertaining to MarJam's contact and dispute with Auto Excellence Group, and provides as much information as is available to identify the records sought, including attaching, as a reference

exhibit, the Notice of Contract that MarJam filed against Auto Excellence Group on August 8, 2014.

## CONCLUSION

For the reasons stated herein, Defendant Gary P. DeCicco respectfully requests that this Court allow his Motion for Issuance of a Rule 17(c) Subpoena and enter an Order issuing a Rule 17(c) subpoena in the form attached as Exhibit A to the Motion, returnable before trial.

Respectfully submitted,

GARY P. DECICCO

By his attorneys,

 /s/ Thomas C. Frongillo
Thomas C. Frongillo (BBO# 180690)
Caroline K. Simons (BBO# 680827)
Jessica L. Perry (BBO# 696392)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, Massachusetts 02210
frongillo@fr.com
simons@fr.com
jperry@fr.com
TEL: (617) 542-5070
FAX: (617) 542-8906

James J. Cipoletta (BBO# 084260)
Law Offices of James J. Cipoletta
Citizens Bank Building
385 Broadway Suite 307
Revere, Massachusetts 02151
jim@cipoletta.com
Tel: (781) 289-7777
Dated: May 22, 2018                          Fax: (781) 289-9468

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed on May 22, 2018 through the CM/ECF system and will be served electronically to registered CM/ECF participants as identified on the Notice of Electronic Filing.

 /s/ Thomas C. Frongillo
Thomas C. Frongillo