UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
                                  )
        v.                        )          Criminal No. 17-cr-10092-NMG
                                  )
GARY P. DECICCO,                  )
                                  )
        Defendant.                )

## OPPOSITION TO MOTION FOR RULE 17(c) SUBPOENA

The government hereby respectfully opposes the motion of defendant Gary P. DeCicco

(the "defendant") for business records of an entity known as MarJam Supply Company

("MarJam")(the "Motion").  The Motion should be denied because it appears to seek records of a

contractual dispute between MarJam and a general contractor rather than between MarJam and

CW-1.  The Motion also should be denied because, as Judge Boal determined with respect to a

proposed Rule 17(c) subpoena for business records of CW-1 (*see* Docket No. 285), the proposed

MarJam subpoena does not comport with Fed. R. Crim. P. 17(c.

## BACKGROUND

### The Crime

In 2013 and 2014, the defendant caused the victim, "CW-1," to believe that the defendant

sought an interest in CW-1's automobile dealership on Route 1 in Saugus, Massachusetts, Auto

Excellence Group.  For example, the defendant told the architect drawing up plans for CW-1's

dealership to put his name on an office in the plans.  The defendant also said to CW-1, "We are

going to make a killing here," referring to the dealership, and offered to help CW-1 with

financing because they were going to be partners anyway.  In August 2014, the defendant sent

flowers, a crystal funeral cross, and a threatening message alluding to the defendant's hidden

ownership of Auto Excellence Group to CW-1.  The message, which the defendant dictated,

reads as follows:

> Congrats Gary –
>
> We all know who's [sic] place that is.  We hope this cross will help
> you get rid of that MUSLIM PRICK.
>
> From all Rt. 1 Autodealers [sic]

CW-1 is of Middle Eastern descent.

In January 2015, the defendant asked his employee and tenant, Jeffrey Prime, to find

someone who could assault CW-1 in exchange for money.  Instead of telling Prime his true

motivation for the beating – that he wanted an interest in CW-1's auto dealership – the defendant

falsely told Prime that CW-1 had done something nefarious to his ex-wife or daughter.  Prime

asked David Witham, who had a past criminal relationship with the defendant, to assist in the

assault plan, and Witham secured the services of James Lundrigan to carry out the assault.

Lundrigan assaulted CW-1 at his place of business on January 11, 2015.   Lundrigan broke

CW1's jaw, which had to be wired shut for approximately 40 days.

## The Motion

In aid of his promised assault on CW-1 at trial, the defendant, having failed to obtain

pretrial production of CW-1's business records over a 10-year period, now seeks business

records of a subcontractor that apparently provided materials for the construction of CW-1's car

dealership.  Specifically, the defendant seeks the following records of MarJam:

1. All invoices, payments, and communications regarding
   payments (or lack thereof) relating to materials provided for the
   construction of Auto Excellence Group at 173 Main Street,
   Saugus, MA from June 1, 2013 – August 8, 2014.

2. All Documents relied on to prepare and file the Notice of
Contract filed August 8, 2014 (attached hereto) filed against
Sahar LLC and Auto Excellence Group.

*See* Exhibit A to the Motion, Docket No. 288-1.  The proposed subpoena defines "document" to

"mean[] all draft and final all [sic] books, papers, documents,  data, photographs, and tangible

objects."  *Id.*  It provides that the term "relating to" is "used in its broadest sense to include any

connection, relation, or relevance."  *Id.*

The Notice of Contract attached to the subpoena was filed pursuant to M.G.L. ch. 254,

§ 4, and provides in part:

> Notice is hereby given that by virtue of a written contract dated
> May 9, 2014, between MarJam Supply Company, subcontractor,
> and Interpro Systems, LLC, . . . said MarJam Supply Company is
> to furnish, or has furnished labor or material … in the creation,
> alteration, repair, or removal of a building … by Interpro Systems,
> LLC, contractor, for Sahar, LLC, dba Auto Excellence Group…
> owner, on a lot of land or other interest in real property described
> as follows: 173 Main Street, Saugus, MA[.]

The Notice of Contract further provides that the contract price was $36,619.73, payments

received as of the August 6, 2014 date of certification amounted to $27,048.43, and the balance

due was $9,571.30.

## **ARGUMENT**

A subpoena under Rule 17(c) is not intended to provide a means of discovery for criminal

cases. *E.g. United States v. Nixon,* 418 U.S. 683, 698-99 (1974).  In order to prevail on a request

for pre-trial production of materials under Rule 17(c), the moving party must show: (1) that the

documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in

advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial

without such production and inspection in advance of trial and that the failure to obtain such

inspection may tend unreasonably to delay the trial; and (4) that the application is made in good

faith and is not intended as a general "fishing expedition." *Id.* at 699-700. To meet these requirements, a defendant must satisfy three criteria: (1) relevancy; (2) admissibility; and (3) specificity. *E.g. United States v. Godfrey,* Crim. No. 11-10279-RWZ, WL 5780439, at *1 (D. Mass. 2013). Here, the defendant has not established, and cannot establish, that the proposed subpoena is for documents that are evidentiary and relevant, or that they are admissible, or that he has satisfied the "specificity" requirement.

In his Memorandum of Law, Docket No. 255 (the "Memo), the defendant asserts that he would not have wanted to be involved in CW-1's business in part because he "cheated customers, cheated contractors with whom [the defendant] regularly did business, and even cheated [the defendant] himself in connection with the sale of a car." Memo at 2-3. The defendant further claims that he "would not want to assume a partnership or ownership stake in CW-1's business because Auto Excellence Group was not a sustainable business model and had multiple outstanding claims against it arising out of nonpayment of contractors." Memo at 4. The defendant contends that MarJam "filed a notice of contract on August 8, 2014 against Sahar LLC and Auto Excellence Group" over an unpaid balance owing of $9,571.30, and that the documents that are the subject of the proposed subpoena would show that a statement CW-1 made that all subcontractors (with one exception) were paid was false. Memo at 2, 4.

However, it appears that the entity that owed MarJam the sum of $9, 571.30 was the general contractor, Interpro. The Notice of Contract alleges no direct contract between MarJam and CW-1's business. MarJam was entitled to file a lien against the property under M.G.L. ch. 254, § 4, based on its claim that its materials had been used in constructing CW-1's building, but the contract was with the general contractor. Moreover, it does not appear that MarJam ever took further action such as filing a complaint, and thus it apparently was paid what was owing,

consistent with what CW-1 told investigators.  Accordingly, neither this incident nor the documents relating to it are relevant because it appears that somebody other than CW-1 was contractually obligated to pay the money, and, in any event, MarJam appears to have been paid.

Moreover, while noting generally that CW-1 discussed with the defendant the fact that he was getting low on cash and having difficulty paying various contractors during construction of the building, "including non-payment to MarJam Supply Company," it is not clear that the defendant claims to have discussed MarJam specifically with CW-1.  In any event, he certainly does not claim that back at the time of the attempted extortion he saw any of these records, or that CW-1 or anybody else related to him the content of any of these records.  Accordingly, none of these records could have had any bearing on the defendant's view of CW-1's business in late 2014 and early 2015 and they thus are not relevant.

Moreover, the scope and language of the subpoena reveals that it does not comport with Rule 17(c) and the *Nixon* requirement of specificity but instead represent a classic fishing expedition.  The proposed subpoena seeks a broad category of unspecified documents: "*All* invoices, payments, and communications relating to materials supplied for the construction of Auto Excellence Group …" and "*All* Documents relied on to prepare and file the Notice of Contract …."  As Judge Boal observed in denying the defendant's request for a Rule 17(c) subpoena for CW-1's business records, "Requesting entire files instead of specific documents indicates a fishing expedition."  Order on Defendant's Motion for Issuance of Rule 17(c) Subpoena for Business Records (the "Order"), Docket No. 285, at 4, citing *United States v. Morris,* 287 F.3d 985, 991 (10th Cir. 2002) (citations omitted); *United States v. Mariano*, No. 12-061-01-ML, 2013 WL 866907, at *2 (D.R.I. Mar. 7, 2013).  "Use of such terms as 'any and all

documents' or 'including, but not limited to' indicates a fishing expedition." Order at 4, quoting *Mariano,* 2013 WL 866907 at *2. The same is true here.

The defendant also has not established admissibility. As the court observed in *United States v. Ventola,* Crim. No. 15-10356-DPW, 2017 WL 2468777, *2 (D. Mass. 2017), a case in which, as here, the defendant sought subpoenas for broad categories of records, the subpoenas "invariably [would] include matters that are not admissible[.]" 2017 WL 2468777 at *2.

Courts routinely quash Rule 17(c) subpoenas in like circumstances. *See, e.g., United States v. Henry,* 482 F.3d 27, 30 (1st Cir. 2007) (upholding district court's decision to quash defendant's subpoenas in part because they were "extremely broad and unrealistic"); *Morris,* 287 F.3d at 991 (requested subpoena failed specificity requirement); *United States v. CartagenaAlbaladejo,* ---F.3d---, 2018 WL 1386806, at**6-8 (D.P.R. Mar. 19, 2018) (quashing subpoena because it lacked specificity and defendant failed to demonstrate admissibility of items sought); *Ventola,* 2017 WL 2468777 at *2; *United States v. Jenks,* 517 F. Supp. 305, 306 (S.D. Ohio 1981). Here, the government has identified multiple bases on which the defendant's Motion for a Rule 17(c) subpoena should be denied. Perhaps most prominent among these are (1) the fact that the records apparently would not show that CW-1 was derelict in paying subcontractors, and (2) the lack of any evidence that the defendant saw any of these documents before he committed the attempted extortion: if the defendant was not aware of these materials when he committed the crime, they are not relevant.

Accordingly, for all the reasons set forth above, the defendant's Motion for a Rule 17(c) subpoena should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

,

Respectfully submitted

ANDREW E. LELLING
United States Attorney

By:   /s/Robert E. Richardson
KRISTINA E. BARCLAY
ROBERT E. RICHARDSON
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

Suffolk, ss.:

Boston, Massachusetts
May 23, 2018

I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/Robert E. Richardson
ROBERT E. RICHARDSON