# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

————————————————————————

UNITED STATES OF AMERICA,

         v.                        No. 17-CR-10092-NMG

GARY P. DECICCO,

               *Defendant*.

————————————————————————

## REPLY BRIEF OF DEFENDANT GARY DECICCO IN SUPPORT OF
## MOTION TO DISMISS INDICTMENT FOR GOVERNMENT MISCONDUCT
### [Leave granted on May 30, 2018]

## INTRODUCTION

    Since May 23, 2018, when the Court postponed the trial by one week and directed the defense to file motions based on the government's late production of Mirnasiri's telephone records, the government has scrambled to make multiple productions of documents and information. On May 24 and 25, 2018, the government made at least *five* supplemental productions of documents and information, much of which constitutes exculpatory and impeachment evidence that is material to preparing the defense. First and foremost, this information includes the shocking revelation that the FBI had, in fact, provided Mirnasiri with recording equipment during its investigation. The FBI's use of such equipment with informants is normally heavily documented, as agents must establish chain of custody and protect the integrity and use of the equipment. Here, however, the government could only provide unverified information about the possible timeframe on which the FBI provided the recording equipment to Mirnasiri, based solely on his and SA Chizmadia's recollection. Second, the government produced information regarding a new series of contacts between another member of the prosecution team and Mirnasiri. Third, it provided additional text messages between the FBI

and Mirnasiri that it had in its possession from before the charges were filed in this case.  The

untimely productions raise several questions and new leads, including new potential witnesses,

which the defense intends to pursue.

Despite these myriad late disclosures, many of which reveal even more

misrepresentations the government has made to the Court and to the defense throughout this

case, the government filed an Opposition brief that audaciously doubled down on its falsehoods.

Dkt. No. 309 ("Opp.").  These recurring misrepresentations are simply contradicted by the

objective facts and evidence that the government has previously withheld and is now attempting

to minimize.  Since filing its Motion to Dismiss the Indictment and supporting Memorandum

("Mem."), Dkt. Nos. 301, 304, the defense has only begun to meaningfully analyze the new

government disclosures and piece together the continuing series of malfeasance and obfuscation

by the prosecution team in its effort to obtain a conviction against Mr. DeCicco by any means

possible.  In particular, the government's admission that Mirnasiri was provided recording

equipment by the FBI at some undisclosed time, casts the calling patterns between SA

Chizmadia and Mirnasiri under a new light:  that the FBI likely attempted to—or may have even

succeeded—in recording Mr. DeCicco on calls, recordings that have never been produced to the

defense.

While the defense believes it has but scratched the surface of the government's

misconduct as of writing, what it has found in the past 72 hours only bolsters its motion for

dismissal.  The defense also is seeking, in parallel, additional discovery to understand the full

extent of what the government has hidden from the defense until now, and intends to serve and

file additional discovery requests forthwith.  The defense respectfully requests the Court to

consider this reply brief in response to this new information and the government's Opposition

while it considers the defendant's pending Motion.  The defense is prepared to raise these new issues at an evidentiary hearing before the Court if need be.

<u>**ARGUMENT**</u>

I.   **Previously Withheld Evidence Now Conclusively Proves the Government Has Doubled Down on its Prior Misrepresentations to the Court and the Defense**

    A.   **The Government Has Failed to Correct Its Prior Misstatements**

At the pretrial conference on May 23, the defense demonstrated that the government—in its relentless effort to imprison Mr. DeCicco pending trial—made repeated material misrepresentations to Magistrate Judge Hennessy to bolster its "weight of the evidence" argument in support of detention.  Chief among them was the dishonest claim that the FBI was *not* working with Mirnasiri to target Mr. DeCicco before December 28, 2014.  The government advanced this falsehood multiple times at multiple hearings, including when responding to Magistrate Judge Hennessy's direct questions seeking an explanation for the government's failure to interview an important witness (Kim DeBenedictis), and for the FBI's failure to obtain recorded evidence of Mirnasiri's communications with Mr. DeCicco during the four-plus months between the Saugus Police's referral of the case in early September 2014 and the assault in mid-January 2015.  *See* Mem. at 20-22.  Moreover, Mirnasiri's own records unmasked a second government misrepresentation:  that the FBI initiated contact with Mirnasiri, not the other way around.  Not true.  It was *Mirnasiri* who reached out to the FBI to do his dirty work—as he has done in the past—days before the Saugus Police even referred the case to the federal agency.  These serial misrepresentations have had an untold impact on Mr. DeCicco's due process rights and liberty.  But they also ran afoul of the ethical rules of conduct that govern counsel's representations to courts.  Mass. R. Prof. C. 3.3(a) expressly prohibits counsel from knowingly making false statements of material fact to a tribunal.  The rule further commands counsel to

correct any false statement of material fact previously made to the tribunal.  *See also* 28 U.S.C.

§ 530B(a) (applying state ethics rules to attorneys for the United States); 28 C.F.R. § 77.3

(same).

Here, the government first had an opportunity to correct the record at the pretrial

conference.  Having viewed cogent proof of the voluminous communications between the FBI

and Mirnasiri from August 27, 2014 to December 9, 2014, the Court asked the prosecutor to

provide an explanation.  The government, caught flatfooted, was unable to offer any plausible or

credible account for the plethora of contacts between Mirnasiri and FBI Special Agent Jesse

Chizmadia, arguing instead that it looked like "phone tag" and that there was never a real

opportunity to debrief or interview Mirnasiri amidst the 40-odd instances of contact.

The government had yet another opportunity to correct the record when it filed its

opposition brief to the defendant's motion to dismiss the indictment.  Dkt. No. 309.  Rather than

come clean, it opted instead to dig in its heels and double down on its false claim, arguing in its

opposition brief:  "There was no active FBI investigation into the attempted extortion before

December 28, 2014, Mirnasiri did not record any conversations with the Defendant[.]"  Opp. at

12.  The government again downplayed SA Chizmadia's numerous contacts with Mirnasiri—

including at least one in-person meeting, and several calls lasting 5 minutes or more—as merely

"a game of phone tag."  Opp. at 13.  But there was irrefutable evidence in the newly-produced

text messages that Mirnasiri and SA Chizmadia met face-to-face in the mid-afternoon of

September 30, 2014:

| | | |
|---|---|---|
| Mirnasiri: | I'm here please come.  (2:19 p.m.) | |
| SA Chizmadia: | On way  (2:27 p.m.) | |
| Mirnasiri: | Ok  (2:28 p.m.) | |

*See* <u>Ex. C</u>.  The government has *not* produced an FBI 302 report of this important meeting and

what Mirnasiri told SA Chizmadia.  Either the government violated established FBI protocol by failing to document the meeting with an informant, or it has withheld that information from the defense.  Neither is acceptable or proper.

**B.      Evidence of the FBI's Attempt to Set Up Mr. DeCicco Beginning in the Summer of 2014**

As the defense already demonstrated, the pattern of calls between SA Chizmadia and Mirnasiri also contradict the government's unconvincing claims that the two were merely playing months-long phone tag or that SA Chizmadia was just telling Mirnasiri to "keep [him] posted."  Opp. at 12.  And now, especially in light of the government's May 25, 2018 disclosure that Mirnasiri was provided with recording equipment by SA Chizmadia, Ex. B,[1] these early 2014 contacts between Mirnasiri and SA Chizmadia take on added significance.  Now more than before, the timing of their phone calls evidence close coordination and apparent attempts by Mirnasiri and the FBI to either record Mr. DeCicco or to relay from Mirnasiri to the FBI, in near real-time, the substance of Mr. DeCicco's statements to Mirnasiri.  For example, on October 8, 2014—after Mirnasiri met SA Chizmadia in person on September 30—Mirnasiri called Mr. DeCicco and subsequently had a 6-minute phone call with Mr. DeCicco.  Mirnasiri *immediately* called Chizmadia after this call, speaking to him twice.  *See* Mem. at 11-12.  Mirnasiri, whom the government has described as being "threatened" by Mr. DeCicco, subsequently tried reaching out to Mr. DeCicco again, and again followed up his attempts with follow-up calls to SA Chizmadia.  Opp. at 12.  None of this remotely looks like an inability of SA Chizmadia and Mirnasiri to connect, or the absence of an active investigation against Mr. DeCicco.

---

[1] As discussed in detail in Section II, Mirnasiri claims not to recall when he was provided with recording equipment, and SA Chizmadia "believes," in self-serving fashion, that it was in February 2015, though this still results in a government misrepresentation about the use of recorded statements in its investigation.  *See* Ex. B.

1.      **Evidence of an Attempt to Record Mr. DeCicco on October 8, 2014**

Beginning on October 5, 2014, there is persuasive evidence that the FBI and Mirnasiri planned to record calls between Mirnasiri and Mr. DeCicco.  That evening, Mirnasiri called SA Chizmadia.  A second call between them occurred on October 7, at 6:26 p.m.  Then, on October 8, SA Chizmadia called Mirnasiri at 9:51 a.m.  Just over an hour later, Mirnasiri called Mr. DeCicco, and appears to have left a voicemail.   At around noon, Mr. DeCicco called back, and also appears to have left Mirnasiri a voicemail, which Mirnasiri later retrieved around 2 p.m.  Twenty minutes later, Mirnasiri launched another call at Mr. DeCicco, which likely was another voicemail.  Mr. DeCicco then called back, and they finally had a 6-minute call at 2:23 p.m.  No sooner than that call ended, at 2:29 p.m., Mirnasiri called SA Chizmadia.  They spoke again at 2:54 p.m.  A chart summarizing the calls is below:

| | |
|---|---|
| **9:51 AM** | **1-min call from Chizmadia to Mirnasiri** |
| 11:16 AM | 1-min call from Mirnasiri to DeCicco |
| 1:59 PM | 2-min call from DeCicco to Mirnasiri |
| 2:01 PM | Mirnasiri Voicemail Retrieval |
| 2:22 PM | 1-min call from Mirnasiri to DeCicco |
| 2:23 PM | 6-min call from DeCicco to Mirnasiri |
| **2:29 PM** | **2-min call from Mirnasiri to Chizmadia** |
| **2:54 PM** | **2-min call from Chizmadia to Mirnasiri** |

These events bear all of the hallmarks of a consensually-recorded call by an FBI informant to a target of an investigation.  The coordination between SA Chizmadia and Mirnasiri is evident. SA Chizmadia appears to have provided instructions to Mirnasiri before Mirnasiri's calls to Mr. DeCicco.  Mirnasiri then checked in with his FBI handler having successfully engaged Mr. DeCicco in a call.

## 2. Evidence Suggesting an Attempt to Record Mr. DeCicco on October 9, 2014

The evidence additionally suggests the FBI and Mirnasiri tried to make another run at obtaining a recorded statement from Mr. DeCicco on October 9, 2014.  Once again, Mirnasiri and SA Chizmadia spoke on the morning of October 9 in advance of Mirnasiri's call.  They also text messaged each other, with SA Chizmadia stating, *"You can call if you want to see if he's running late."*  At 1:19 p.m., Mirnasiri called Mr. DeCicco and appears to have left a voicemail. He immediately called SA Chizmadia, likely to report his results.  The calls and text messages are set forth on the following chart:

| | |
|---|---|
| **11:38 AM** | **3-min call from Mirnasiri to Chizmadia** |
| 1:10 PM | Text from Chizmadia to Mirnasiri:  [blank][2] |
| 1:11 PM | Text from Mirnasiri to Chizmadia: *"No"* |
| 1:11 PM | Text from Chizmadia to Mirnasiri: *"You can call if you want to see if he's running late."* |
| 1:12 PM | Text from Mirnasiri to Chizmadia: *"Ok"* |
| 1:19 PM | 1-min call from Mirnasiri to DeCicco |
| **1:19 PM** | **2-min call from Mirnasiri to Chizmadia** |

The next day, October 10, SA Chizmadia called Mirnasiri in the morning.  As with the calls on October 8, there is no documentation of this event.  No FBI 302 report was written or produced. No recordings or documentation surrounding an attempted consensual recording apparently exist.

## 3. Evidence Suggesting an Attempt to Record Mr. DeCicco on December 9, 2014

By the end of the October, the FBI introduced another law enforcement officer into this undocumented probe of Mr. DeCicco:  Task Force Officer (TFO) Mark R. Frenzo, from the

---

[2] The text field shows up blank on the FBI call records, but it may indicate either a blank text or the use of an emoji.

Massachusetts State Police.  Along with SA Chizmadia, TFO Frenzo began communicating

heavily with Mirnasiri.  Between October 30 and December 28, there were over 40 calls and text

messages between Mirnasiri and TFO Frenzo.  This high level of contact ultimately led to what

appears to be yet a third attempt to record Mr. DeCicco on December 9, 2014:

| | |
|---|---|
| 11:48 a.m. | 1-minute call from DeCicco to Scourtas |
| 11:49 a.m. | 1-minute call from DeCicco to Mirnasiri |
| 12:03 p.m. | Mirnasiri retrieves voicemail |
| 4:09 p.m. | 11- min call from Mirnasiri to Scourtas |
| 4:29 p.m. | 7-minute call from DeCicco to Scourtas |
| 6:00 p.m. | 12-minute call from Scourtas to Mirnasiri |
| 6:25 p.m. | 6-minute call from Mirnasiri to Chizmadia |
| 6:41 p.m. | 11-minute call from Scourtas to DeCicco |
| 6:59 p.m. | 15-minute call from Mirnasiri to Scourtas |
| 7:15 p.m. | 2-minute call from Mirnasiri to Chizmadia |
| 7:17 p.m. | 3-minute call from Mirnasiri to DeCicco |
| 7:21 PM | Text from Mirnasiri to Chizmadia: *"He didn't answer and it went to voice mail.  I did leave him a message."* |
| 7:36 PM | Text from Chizmadia to Mirnasiri: *"Ok, let me know if he calls back, I will touch base in the morning."* |
| 7:57 PM | Text from Mirnasiri to Chizmadia: *"Ok tks,"* |

The details of these calls is set forth in the defendant's memorandum in support of his motion to

dismiss.  *See* Mem. at 10-15.

### 4.   The Form 1057 Dated February 16, 2015

While Mirnasiri's phone records already belie the falsehood that there was no active FBI

investigation into Mr. DeCicco before December 28, 2014, one of the government's own internal

documents—an FD-1057 Laboratory Request prepared on February 16, 2015—now definitively

proves the government's narrative to be false.  The Form 1057 was generated following SA

Chizmadia's meeting with Mirnasiri two days after the assault.  On January 12, 2015, the day after the assault, Mirnasiri texted SA Chizmadia, stating "**I have information 4 u** . . . When can you come?"  *See* Ex. A (emphasis added).  SA Chizmadia replied that he would meet Mirnasiri at AEG the next day in the morning "before [AEG is] open," and also indicated that he wanted to collect fingerprint evidence.  *Id.*  Mirnasiri texted back, "Yes, will see you there."  *Id.*  Notably, there is no FBI 302 report of the substance of this January 13, 2015 interview of Mirnasiri, even though Mirnasiri had "information" to share with SA Chizmadia.  Instead, the 302 Report—in a late insertion drafted on or around March 16, 2017—blandly in its entirety indicates that on January 13, 2015, "DNA and fingerprint evidence was collected AUTO EXCELLENCE GROUP."  *Compare* Ex. D and Ex. E.

On February 16, 2015, SA Chizmadia sent an FD-1057 request to the laboratory to test the DNA and fingerprint evidence that it had collected from Auto Excellence Group.  Ex. F.  In that request, SA Chizmadia wrote:

> Laboratory assistance requested for above-captioned investigation.  *A potential cooperating witness that was currently assisting in obtaining evidence against a subject of the above captioned investigation was assaulted on January 11, 2015* at the cooperating witness's place of business.  It is believed that the assault was arranged by the same subject of the above captioned investigation in response to an alleged debt owed by the cooperating witness to the subject.

Ex. F at 2 (emphasis supplied).  SA Chizmadia's statement that Mirnasiri *was currently assisting* the FBI *in obtaining evidence* against Mr. DeCicco as of the time of the assault is proof positive that the FBI had been actively investigating Mr. DeCicco prior to the assault, and moreover that Mirnasiri was assisting the FBI in collecting evidence against him.  But the government still denies that Mirnasiri recorded Mr. DeCicco, that Mirnasiri assisted the FBI in investigating Mr. DeCicco or provided any information of substance to the FBI, or that even any active

investigation was afoot prior to December 28, 2014.[3]

   As with other exculpatory evidence, the government produced this FD-1057 document late to the defense.  It was due to be produced with automatic discovery, by May 26, 2017, because it constitutes a "report of examination and test" under Fed. R. Crim. P. 16(a)(1)(F).  Instead, the government produced it to the defense almost 9 months later, on February 12, 2018, claiming that it was "inadvertently omitted from prior productions in this case."  *See* Ex. G.[4]  At first, the defense noticed that the document reflected a divergent motive for the assault—"an alleged debt owed by the cooperating witness to the subject"—which the government has dismissed as "inartful" but not inconsistent with its theory of the case.  *See* Dkt. No. 171 at 9.  But another significance of this document is now clear.  The government's statement that "the FBI did not actively begin to investigate the flower incident until the Defendant followed up his threat with action" is misleading, if not outright false.  Opp. at 12-13.  Its statement that "there was no active FBI investigation into the attempted extortion before December 28, 2014" is also misleading, if not outright false.  Opp. at 12.  Its statement that "undersigned counsel did not knowingly make a representation to the Court about the contacts between the FBI and Mirnasiri between August and December 2014" is false, and in fact doubles down on its prior misrepresentations to the Court.  Opp. at 13-14.  The government has no real answer to its many prior representations beyond a feeble attempt to parse words by claiming, "the government ***does not believe*** it has ever represented to the Court that the FBI had **no contact** with Mirnasiri

---

[3] To the extent the government will attempt to claim that this FD-1057 form and its prior representations to the Court are both true by arguing that the investigation occurred between December 28, 2014 and January 11, 2015, it will be to no avail because the government has repeatedly represented that there was "no time" to investigate this case in the 11 days between the December 28 interview and the January 11 assault, especially given the holidays. *See* Mem. at 20-22 (quoting the government's representations to the Court on November 3, 2017).

[4] The government later backtracked and claimed that it was not obligated to produce this document, but chose to do so "out of an abundance of caution."  *See* Dkt. No. 171 at 8-9.

between August and December." Opp. at 12 (emphasis in original and supplied in italics). They continue to be false. This continued willingness of the government to dissemble the facts of its 2014 investigation of Mr. DeCicco to the Court constitutes outrageous conduct and should be sufficient grounds, standing alone, to dismiss the Indictment. *See United States v. Chapman*, 524 F.3d 1073, 1084-88 (9th Cir. 2008) (affirming dismissal of indictment, in part, due to government's misrepresentations to Court and its lack of contrition and failure to grasp the severity of its misconduct); *United States v. Kojoyan*, 8 F.3d 1315, 1318 (9th Cir. 1993) ("In determining the proper remedy [for prosecutorial misconduct], we must consider the government's willfulness in committing the misconduct and its willingness to own up to it."); *see also* Mass. R. Prof. C. 3.3(a) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"); 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."); 28 C.F.R. § 77.3 ("[A]ttorneys for the government shall conform their conduct and activities to the state rules and laws . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State[.]").

But the latest productions and disclosures from the government, outlined in more detail below, actually give rise to additional instances of government misconduct, all of which further support dismissal of the indictment.

## II.     The Government Belatedly Notified the Defense that Mirnasiri Was Provided Recording Equipment by the FBI

In a twist that shocked the defense, on May 25, 2018, the government disclosed *for the very first time* that Mirnasiri had been provided with recording equipment by the FBI.  *See* Ex. B. Mirnasiri told investigators, "SA Chizmadia provided him with recording equipment, including a recording device to use with his phone and a recording device hidden in a water bottle that he kept in his office." *Id.*  This new development brings into sharp focus SA Chizmadia's earlier notation in the February 16, 2015 FD-1057, that Mirnasiri had been actively assisting the FBI in "obtaining evidence" in its investigation into Mr. DeCicco.  *See* Ex. F.

When it came to details about the recording equipment, however, the government provided much self-serving smoke but no certainties.  The government provided the defense with (1) no written applications or authorizations from within the FBI or the Department of Justice authorizing the use of such recording equipment for consensual recordings or the scope of such authorization; (2) no records or documents that would show the date this equipment was provided to Mirnasiri; (3) no documents showing the chain of custody of the recording equipment; and (4) no written instructions or acknowledgements that Mirnasiri signed regarding his apparent license to perform consensual recordings on behalf of the FBI.  Mirnasiri claimed to "not remember when exactly SA Chizmadia provided him with the devices or for how long he had the devices." Ex. B.  SA Chizmadia "believes" he provided Mirnasiri with the equipment in or around February 2015.  *Id.*  Worriedly, the government's surprise disclosure contained an additional detail that Mirnasiri was incapable of following the government's instruction:  he had attempted to record an individual despite two separate FBI agents explicitly instructing him not to do so, and moreover either misplaced or destroyed the recording because the government now claims "no such recordings exist."  *See id.*

Importantly, this new disclosure reveals a new misrepresentation by the government.  The government has repeatedly represented to this Court that Mirnasiri was not wired up to record conversations with Mr. DeCicco after[5] the assault because that would have been "preposterous." The government affirmatively argued this during Mr. DeCicco's detention hearings because it tended to explain why the government had no evidence of incriminating oral statements by Mr. DeCicco about the motive for the assault.  During the October 5, 2017 hearing on whether to reopen the detention hearing, the government argued that the absence of recorded evidence was completely to be expected:

> You know, I suggest, Your Honor, that that does not mean that the government cannot prove the motive in this case or that CW-1 is somehow not credible.  And whether –
>
> The suggestion that we should send a guy who had his jaw wired shut for 40 days or 60 days or however it was, have him wear a wire and go talk to the guy who hired someone to beat him up again is, I think, a little bit preposterous, given the circumstances.

Ex. S at 67:17-25.  During the November 3, 2017 hearing—on the heels of misrepresenting to the Court that the FBI "simply didn't have a chance to pursue this investigation" because it did not begin until December 28, 2014—the government similarly argued:

> And the suggestion that they would wire [Mirnasiri] up after he is viciously beaten and had his jaw wired shut for 40 days is preposterous at this point.  The FBI is not going to put someone into a situation like that which would be a significant danger to his safety.

Ex. T at 56:6-10.  But it is now clear that the government did *not* think such a suggestion was preposterous—and indeed the government, if its recent statement is to be credited, provided Mirnasiri with recording equipment to do just that, in February 2015, shortly after the assault.

*See* Ex. B.  In its haste to convince the Court that the weight of the evidence against Mr. DeCicco

---

[5] As argued extensively already in the defense's Memorandum in support of the Motion, the government also represented that it did not wire Mirnasiri *before* the assault because there was "no time."

was not too insufficient to keep him detained pretrial, however, the government saw fit instead to mislead the Court about the reason why there was an absence of consensually recorded statements that would tend to incriminate Mr. DeCicco.  At best, the government recklessly made this representation, repeatedly, even though it had failed to first ascertain from its agents whether Mirnasiri had been provided with recording equipment.  At worst, the government knew Mirnasiri was wired up to record Mr. DeCicco, and decided to mislead the Court anyway by calling the idea "preposterous."

Regardless, it seems inconceivable that the government did not know until trial preparation interviews on May 24 and 25 that Mirnasiri was tasked with recording Mr. DeCicco and was provided with FBI recording equipment in order to do so.  Indeed, the government does not even try to explain how it just learned this information and is just now sharing it with the defense.  More importantly, if the prosecutors in this case truly just learned *on May 24 and 25* that Mirnasiri had recording equipment, then how could it have so confidently asserted that there were no recordings at all of Mr. DeCicco in a brief to this Court on *May 25*, without any further investigation, when it on *the same day* (1) could not even state when Mirnasiri was provided with the equipment; and (2) could not identify recordings that may or may not have been made by Mirnasiri?  *Compare* Ex. B with Opp. at 12.  The defense is demanding all documents concerning this recording equipment issue, but it is clear that the government's discovery violations go much deeper than even the defense has uncovered to date.

III.    **The Untimely Production of Additional Exculpatory Text Messages Between the FBI and Mirnasiri**

   A.    **The Government's Representations to the Court and to the Defense Regarding Its Completed Review of Mirnasiri's Text Messages**

On May 24 and May 25, 2018, the government produced, among other things, a series of text messages between FBI SA Jesse Chizmadia and Mirnasiri that had not been previously

produced.  *See* Ex. B, Ex. I, and Ex. J.  One set of text messages were obtained from the forensic

image of Mirnasiri's phone, which has been in the government's possession since at least April

18, 2018.  *See* Ex. H.  The government made this belated production of new text messages after

the final pretrial conference on May 23, 2018, and after the government had made repeated

representations to the defense that it had reviewed all text messages from Mirnasiri's phone, on

May 10, 2018, on May 21, 2018, and again on May 23, 2018, with the clear implication that

there were no relevant or exculpatory documents to produce.  *See* Ex. L, Ex. M, and Ex. N.

On May 7, 2018, the government produced as part of its 21-day production text messages

between SA Chizmadia and Mirnasiri from an analysis of SA Chizmadia's phone, all of which

fell within 2015.  On May 10, 2018, the government produced a number of images from

Mirnasiri's cell phone from an extraction report of the device.  No text messages were produced.

Along with the production, the government wrote that it "has reviewed all SMS and MMS

messages and any deleted SMS and MMS messages the FBI technicians were able to recover . . .

***the government has now produced everything that was either relevant or potentially***

***exculpatory or impeachment material recovered from the phone to date***."  Ex. L (emphasis

added).  Later that day, before Magistrate Judge Hennessy, the government represented to the

Court:

| | |
|---|---|
| THE COURT: | So is the review of CW's phone complete? |
| GOVT: | It is almost complete.  We just got the phone a couple of weeks ago.  We're expediting this. |
| THE COURT: | Okay. |
| GOVT: | ***And we have reviewed all the text messages and some deleted text messages***.  There's nothing there that predates a certain point, and we're not sure if it's because of an update to the system or what.  The FBI's hard drive coach can't answer it, but we have the agents – ***Special Agent Elio has actually gone through tens of thousands of texts*** and phone logs and pictures, and I believe the only thing left are |

video and audio files, which according to our analysis actually are from, like, 2016 and '17.  They post date, ***but we are looking even more carefully for anything that might be impeachment material or anything like that.***  This is – the victim voluntarily turned over his phone to be searched by the FBI here.  Okay.  So we're not hiding everything.  We searched through the phone.  It was produced on a rolling basis everything we have.  We're almost done.  If we're done, I'll confirm we're done.

The COURT:     And if they have anything else they'll produce it.

Ex. O at 21:15-22:12.  On May 21, 2018, the government reiterated that "we have completed the review of CW-1's phone, with the exception of some video/audio files that postdate the offense at issue in this case and therefore would be entirely irrelevant[6] . . . I have completed the review per my representations to Judge Hennessy and there is nothing to produce pursuant to his order." Ex. M.  And on May 23, 2018, the government again represented, "We have completed the review of all content on the phone that we were able to access."  Ex. N.

**B.     The Belated Production of the Text Messages between SA Chizmadia and Mirnasiri**

The next morning, on May 24, 2018 at 9:15 a.m., the government produced for the first time a *second* batch of text messages between SA Chizmadia and Mirnasiri from SA Chizmadia's phone analysis that it had in its possession all along, blaming the omission on "inadvert[ence]."  *See* Ex. I.  These text messages are dated between August 27, 2014 and December 10, 2014.  The defense would not have known about these text messages without Mirnasiri's phone records, which the defense did not receive until May 17 and May 22, 2018. While the government blames the defense for not alerting the government straight away as to the missing 2014 text messages, *see* Opp. at 16, it ignores the time it took for the defense to identify Chizmadia's phone number from an earlier government production, and then to cross-reference it

---

[6] The government erroneously characterizes the postdated material it had yet to review as "irrelevant" notwithstanding its earlier representation that it may include impeachment material.

against Mirnasiri's phone records, and then to run the appropriate searches through the 500+ pages of records to understand the full extent of the government's non-production.

Later on May 24, 2018, at 11:10 a.m., the government disclosed for the first time that the cellphone number of TFO Frenzo appeared on Mirnasiri's phone records.  *See* Ex. P.  TFO Frenzo and SA Chizmadia worked closely together in their investigation of the events at issue in this case, including being jointly present during the December 28, 2014 interview that represents the earliest FBI FD-302 Report in this case (that the defense is aware of).  *See* Ex. E.  The defense has now identified over 40 instances of contacts over text messages and phone between TFO Frenzo and Mirnasiri between August 2014 and December 28, 2014, the same period of time the government would have had the Court and the defense believe that the FBI was not investigating Mirnasiri's complaint about alleged extortion.  *See* Mem. at 20-22.  The government has yet to produce any of these text messages, even though TFO Frenzo is part of the prosecution team.[7]

Later again on May 24, 2018, at 2:54 p.m., the government produced a *third* batch of text messages between SA Chizmadia and Mirnasiri from Mirnasiri's phone that it has had in its possession since at least April 18 and certainly by May 10, 2018, blaming the omission on the fact that these text messages "inexplicably" did not show up on SA Chizmadia's phone analysis. Ex. J.  These text messages date between September 16, 2016 until January 1, 2018, and were

---

[7] Courts determining whether state law enforcement is part of the prosecution team consider whether a "joint state and federal prosecutorial effort in obtaining the return of an indictment." *United States v. Cadden*, 2015 WL 13683814, *3 (D. Mass. July 13, 2015).  In determining whether there was a joint investigation, courts have looked to several factors, including (1) whether one agency acts on behalf of or under the control of another, (2) the extent to which agencies work as a team and share resources, and (3) ready access to the other agency's files.  *Id.* (quoting *United States v. Ferguson*, 478 F. Supp. 2d 220, 338-239 (D. Conn. 2007)); *see also in Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (requiring "the individual prosecutor . . . to learn any favorable evidence known to others acting on the government's behalf in the case, including the police.").  Here, TFO Frenzo worked under the direction of the FBI, conducted joint interviews of Mirnasiri with SA Chizmadia on the events at issue in this case, and the government has requested and even directed the search of the Massachusetts State Police for Captain Frenzo's records and text messages.  *See* Ex. P.  TFO Frenzo is thus part of the prosecution team.

found on an extraction report of Mirnasiri's phone that the government had earlier represented as having reviewed.  The government did not explain how these text messages were not produced despite repeatedly representing to the defense that it had reviewed *all* of Mirnasiri's text messages and produced  "everything that was either relevant or potentially exculpatory or impeachment material recovered from the phone[.]"  Ex. L.  Either the government did not review them and misrepresented to the defense that it had, or the government did review them and misrepresented to the defense that there was nothing "either relevant or potentially exculpatory or impeachment material" to produce.  Neither explanation is acceptable.

On May 25, 2018, the government produced a *fourth* batch of text messages between SA Chizmadia and Mirnasiri, which were apparently obtained from SA Chizmadia's phone (and thus were always within the government's possession, custody, and control).  *See* Ex. B.  These text messages date from on or around October 2, 2015 until January 1, 2018.  Numerous text messages in this latest production were entirely new, as they were missing from the May 7 or May 24, 2018 productions, even accounting for the partial overlap in the time periods.  This time, the government did not even deign to explain why it did not produce these text messages any sooner.  *See id.*

## IV.    The Text Messages Reveal a Troubling Relationship Between the FBI and Mirnasiri

The text messages the government withheld until May 24 and 25, 2018 reveal an entirely inappropriate relationship between the FBI and Mirnasiri that goes beyond customary impeachment material.  They show that the FBI was willing to apply the resources of the federal law enforcement apparatus to help Mirnasiri on matters unrelated to the investigation of this case, including Mirnasiri's town hearings with Saugus and his appeal of tax assessments.  They further show a relationship that had encroached into the inappropriately personal, including Mirnasiri entertaining SA Chizmadia at his home, Mirnasiri and SA Chizmadia offering to buy

each other meals, Mirnasiri teasing and congratulating SA Chizmadia on the arrest of Mr.

DeCicco, Mirnasiri sending SA Chizmadia a tasteless, graphic text message, and SA Chizmadia

using unacceptably personal monikers to greet Mirnasiri, such as "buddy," "pal," and "my

friend."  *See* <u>Ex. K</u>.

### A.      The FBI Offered to Assist Mirnasiri With a Saugus Town Hearing

On March 21, 2017—just four days after Mr. DeCicco's arrest—Mirnasiri texted SA

Chizmadia that "Fred Verona [sic] has send his right hand man for this hearing . . . I"m fucked

again."  *See* <u>Ex. K</u> at USAO_DECICCO_00025729.  Fred Varone is the Building Inspector for

the Town of Saugus.  Mirnasiri's text likely refers to a town hearing that would affect the taxes

he would pay with respect to Auto Excellence Group, as Mirnasiri has consistently complained

about his tax rate for the business, even to SA Chizmadia.  *See* <u>Ex. A</u> at 4.  Without further ado,

SA Chizmadia immediately offered to help Mirnasiri, texting back 7 minutes later, "Do you

know name?  ***We will square this away don"t worry***."  *See* <u>Ex. K</u> at

USAO_DECICCO_00025729 (emphasis added).  Mirnasiri supplied SA Chizmadia with the

name, "Ron Cohan," and SA Chizmadia diligently checked in with Mirnasiri later in the day,

texting, "How did it go?"  *Id.*  Mirnasiri promised fill SA Chizmadia in, texting "I tell you later."

*Id.*

The government has not disclosed this offer to help Mirnasiri in this instance, which

constitutes, at the very least, a promise, reward, or inducement to a witness in the government's

case-in-chief under Local Rule 116.2(b)(1)(C).

### B.      The FBI Offered to Assist Mirnasiri With Another Tax Issue

On March 15, 2017, Mirnasiri texted SA Chizmadia the address of the Appellate Tax

Board, located at 100 Cambridge St, Suite 200, Boston.  He further texted SA Chizmadia that he

was going to be there on March 21, at 9:30 a.m.  *See* <u>Ex. K</u> at USAO_DECICCO_00025725.

This text message appears to be a continuation of Mirnasiri's telephone or in-person conversation with SA Chizmadia regarding some unstated tax issue. It is reasonable to infer from this standalone text that SA Chizmadia had asked Mirnasiri to keep him informed of when and where he was to appear to appeal his tax issue, and SA Chizmadia or someone on his behalf would attend in support.

The government has not disclosed this offer of the government to help Mirnasiri either, which also constitutes, at the very least, a promise, reward, or inducement to a witness in the government's case-in-chief under Local Rule 116.2(b)(1)(C).

### C.   Mirnasiri and the FBI Inappropriately Celebrated the Arrest of Mr. DeCicco

Mr. DeCicco was arrested on March 17, 2017. Mirnasiri assisted the FBI with the arrest, drawing floorplans of the inside of Mr. DeCicco's house—including intimate details, such as the location of Mr. DeCicco's bedroom and bedroom windows and doors—at the FBI's request.



See Ex. K at USAO_DECICCO_00025725. In return, Mirnasiri appears to have been kept well-informed of the pending arrest, allowing him to film the actual moment that the FBI was present

at Mr. DeCicco's house to arrest him—a video clip that Mirnasiri kept as a memento and freely

showed others to gloat.  *See* USAO_DECICCO_0003226.[8]

The new text messages between Mirnasiri and SA Chizmadia further confirm the

inappropriate exchange of information from the FBI to a cooperating witness.  SA Chizmadia

texted Mirnasiri shortly after the early morning arrest, at 6:19 a.m., "We just arrested him."

Mirnasiri immediately asked for details: "Where was he?"  SA Chizmadia responded that Mr.

DeCicco was "[h]ome," and promised to tell Mirnasiri more:  "I will call later."  Mirnasiri

congratulated SA Chizmadia, "Good job" and further teased him, "I see you[,]" likely meaning

that he spotted SA Chizmadia from his window as he savored the sight of Mr. DeCicco's arrest.

SA Chizmadia joined in the joke, stating, "I figured."  Then, in a flagrant disregard for propriety,

Mirnasiri asked SA Chizmadia to come over to his home down the street and get a cup of coffee:

"U want to come over for coffee?"  Instead of rebuffing him, SA Chizmadia answered, "No

that's ok, *another time*, we gotta get him to court.  I will call later and give you an update.

Thanks, *I will take you up on it later*."  Mirnasiri expressed his glee again, texting, "No my

friend, THANK YOU. GREAT JOB." *See* <u>Ex. K</u>.

### D.    The FBI's Missing FD-302 or Confidential Human Source Reports For Additional Meetings between SA Chizmadia and Mirnasiri

The newly-produced text messages now reveal that either the government failed to

produce a number of interview reports between SA Chizmadia and Mirnasiri, or that the FBI

never memorialized these meetings with its cooperating witness.  The defense has located at least

*twenty-two* instances where SA Chizmadia and Mirnasiri appear to have spoken regarding the

investigation, either on the phone or in person, but no corresponding CHS or 302 reports have

---

[8] This video was produced by the government on March 20, 2018, in response to a direct request by the defense.  *See* <u>Ex. Q</u> (March 20, 2018 Gov't discovery letter). The defense learned of its existence from a witness to whom Mirnasiri had shown the footage.

been produced.  For example, on February 18, 2015, SA Chizmadia texted Mirnasiri that he was

"in traffic, there at about 430 or so," indicating that he was on his way to meeting Mirnasiri.  In

another example, on July 29, 2015, SA Chizmadia texted Mirnasiri that he "[w]as looking to stop

in in about 30 min.  Will you be around?"  Mirnasiri replied, "Yes."  Yet none of these

encounters are reflected in an FBI report.  In sum, SA Chizmadia appeared to interview Mirnasiri

on the following dates, none of which resulted in a corresponding interview report:

| Date | Meeting/Call |
|---|---|
| September 30, 2014 | Meeting |
| January 13, 2015[9] | Meeting |
| January 14, 2015 | Call |
| January 18, 2015 | Meeting |
| February 18, 2015 | Meeting |
| April 20, 2015 | Call |
| July 29, 2015 | Meeting |
| November 9, 2015 | Call |
| June 1, 2016 | Call |
| September 26, 2016 | Meeting |
| January 11, 2017 | Meeting |
| January 31, 2017 | Call |
| February 15, 2017 | Meeting |
| March 13, 2017 | Meeting |
| March 20, 2017 | Call |
| March 27, 2017 | Meeting |
| April 7, 2017 | Call |
| May 30, 2017 | Call |
| June 27, 2017 | Call |
| July 10, 2017 | Meeting |
| September 14, 2017 | Meeting |
| September 19, 2017 | Meeting |

There appear to be affirmative efforts by the government to hide SA Chizmadia's

involvement in this investigation; he does not appear on any of the interview reports as being

present after November 22, 2016.  For example, on March 13, 2017, SA Chizmadia texted,

---

[9] An FD-302 exists for this meeting, but does not memorialize the information exchanged from Mirnasiri to SA Chizmadia.  *See* Section I.A, *supra*.

"Might be around 7 tonight, that OK?" Mirnasiri texted back, "6:30 please." The defense

received no interview report for March 13, but received two interview reports dated March 15

and March 16, 2017, where SA Chizmadia was not listed as present. Similarly, on March 20,

2017, SA Chizmadia texted Mirnasiri, "Good weekend? Will call about 4 with an update." He

further texted Mirnasiri asking for information about who was visiting Mr. DeCicco's house.

But the only corresponding CHS report was on March 21, 2017, and SA Chizmadia is again not

listed as present. This happened again on March 27, 2017, with SA Chizmadia texting, "Might

be more like 8 but I can come North." Mirnasiri asked SA Chizmadia close to 8 p.m., "R u on

your way?" and SA Chizmadia replied, "Yep almost there." No interview report was generated,

though a March 28, 2017 report was produced where SA Chizmadia was not listed. The defense

has made a concurrent demand to the government for immediate production of these missing

reports, if they exist.

### E.     Gross Impropriety of the Relationship between Mirnasiri and the FBI

Mirnasiri and SA Chizmadia developed a relationship that clearly overstepped the

professional bounds of an FBI agent and his source, tainting the integrity of the FBI's

investigation into a mutual target of theirs. For example, Mirnasiri and SA Chizmadia offered to

buy each other meals. On July 10, 2017—one of the meetings that does not appear to have been

memorialized—SA Chizmadia texted Mirnasiri, "Be there about 9, you want a coffee?" He then

texted "you want lunch at Pace? . . . No sandwich?" Mirnasiri then texted, "Come over I will

order lunch for you from next door." *See* Ex. K at USAO_DECICCO_00025735-36. Similarly,

on September 14, 2017, Mirnasiri texted SA Chizmadia, "Can I invite you guys to dinner?" *See*

Ex. K at USAO_DECICCO_00025737.[10]

On September 17, 2017, Mirnasiri texted a grossly inappropriate "meme" of a sexual nature to SA Chizmadia, purporting to make light of the serial hurricanes striking the Atlantic Coast of Florida in the fall of 2017:



Further, throughout the text messages between Mirnasiri and SA Chizmadia, it is clear that the agents had progressed beyond a professional, investigatory relationship.  SA Chizmadia called Mirnasiri by affectionate monikers such as "my friend," "buddy," and "pal."  *See, e.g.*, Ex. K at USAO_DECICCO_00025740.

---

[10] *See also* text messages between Mirnasiri and SA Chizmadia stating, "You want lunch?" and then acknowledging his awareness of the prohibition against Mirnasiri purchasing a meal for federal agents.  ("Nope we got you, at some point we will let you."  Mirnasiri replied, "Ok lol").  Ex. K.

**V.    The Defense Is Still Missing Critical Evidence that the Government Should Have Already Produced**

In addition to the missing documents concerning the recording equipment, the defense is still likely missing text messages between Mirnasiri and the government from December 9, 2014 through January 12, 2015.  According to the government, Mirnasiri met with SA Chizmadia (and TFO Frenzo) on December 28, 2014, a Sunday.  However, the government has not produced any text messages or other communications between Mirnasiri and SA Chizmadia between December 10, 2014—when they appear to last speak on the telephone—and January 12, 2015.  It is unlikely that Mirnasiri appeared for an in-person (or even telephonic) meeting with SA Chizmadia on December 28, 2014, after last speaking to him two weeks prior, without some sort of communication closer to the date confirming date and time—as the two customarily did before meeting.  *See, e.g.*, Section IV.D, *supra*.

As discussed above, the defense also is missing the interview reports of numerous meetings and calls between SA Chizmadia and Mirnasiri that appear to otherwise have gone unmemorialized.  *See id.*  The defense is missing the many text messages between TFO Frenzo and Mirnasiri, which were exchanged between August 2014 and December 2014.  The defense also is seeking from the government communications between Mirnasiri and FBI Special Agent Tarah Rankins, who appeared to take over for SA Chizmadia as Case Agent after November 22, 2016, when SA Chizmadia's presence from the case appears to vanish despite his continued communications with Mirnasiri.

The defense is further seeking from the government discovery about an individual with whom both SA Chizmadia and Mirnasiri are acquainted in the context of the investigation: an individual called "Lou" who appears on SA Chizmadia's text messages.  Mirnasiri has had a long and close relationship with an individual whose first name is "Lou," and spoke with him

very frequently in 2014, particularly during the same time Mirnasiri was communicating with SA Chizmadia.

Moreover, given SA Chizmadia's increasingly outsized role in these events, and the ever-mounting number of irregularities and late bombshell disclosures by the government, the defense is reiterating its demand for metadata concerning the March 16, 2017 FD-302 report—SA Chizmadia's "first" memorialization of the supposed interview on December 28, 2014—that the government represents no longer exists, despite its relative recency (March 2017).  The defense, unfortunately, no longer has any confidence in the government's representations about the investigation, the government's own discovery obligations, or the government's compliance with such obligations, which have proven again and again to be inaccurate, if not meaningless.  An independent forensic review of SA Chizmadia's computer and *in camera* review may be necessary.

## VI. The Government Failed to Coherently Explain Why It Waited Until April 2017 to Seek Mirnasiri's Telephone Records

With respect to the government's response to the issue of the late production of Mirnasiri's phone records, its opposition reveals a gaping hole:  no confirmation anywhere that it *did not have* any of Mirnasiri's telephone records—whether tolling, billing, or otherwise, *see* Opp. at 13, n.8—before May 17, 2018.  Instead, the government merely represents that the specific set of records produced to the defense on May 17 and 22, 2018 were provided by T-Mobile.[11]  Opp. 4-6.

The government's denials of misconduct with respect to obtaining these records so late make no sense.  First, the government implies that it did not subpoena Mirnasiri's telephone

---

[11] This appears to be substantiated by the production of emails between the USAO and T-Mobile, but with all that has come to pass, the defense reserves the right to request independent forensic review of these emails.

records until April 2017 because that is the point where it was able to "tie[] the two critical events in this attempted extortion case . . . definitively to the Defendant." Opp. at 4. But it is Logic 101 that one does not need to identify a suspect before subpoenaing or otherwise obtaining the alleged *victim's* telephone records, especially if the victim's records could be useful in tracing the origins of an alleged threatening call he received. Indeed, the government was quick to subpoena every other witness's records to find inculpatory evidence and file charges against Mr. DeCicco on March 16, 2017, evidently a month before seeking the alleged victim's phone records. *See* Dkt. No. 3-1 ¶¶ 17, 20 (describing efforts to corroborate witness statements with phone records). The government's explanation merely strings together words describing events without any logical force behind its argument.

Second, the government ignores that it was able to obtain information about Mirnasiri's phone from Mirnasiri directly, from the outset of their cooperation in August 2014 up until the present. For instance, Mirnasiri texted SA Elio text message chains between him and other witnesses, and also forwarded SA Elio at least one video clip from his phone. *See* Ex. R. Moreover, a telephone account owner can easily request his or her own billing records from his or her telephone provider, including historical bills from years past. *See, e.g.*, T-Mobile Support Pages, *available at* https://support.t-mobile.com/docs/DOC-2504.[12] The government has avoided stating whether it ever attempted to obtain these records from Mirnasiri directly, continuing to parry the defense's inquiries about its efforts to obtain Mirnasiri's phone records by parroting its lines about its subpoena efforts in April 2017 and May 2018. *See* Opp. at 4-5 and 5, n.4.

---

[12] *See also* T-Mobile support page, available at https://support.t-mobile.com/thread/134563 (describing method to obtain reprints of historical bills older than 24 months at a cost of $5 per reprint).

Critically, the government's hand-waving about its apparent failure to obtain Mirnasiri's phone records via its April 2017 subpoena (and subsequent success via its May 2018 subpoena) masks its continued silence as to whether the government did, in fact, ***come into possession*** of Mirnasiri's phone records prior to May 17, 2018—whether or not they were able to obtain them via the April 2017, the May 2018 subpoena, any other subpoena currently unknown to the defense, or voluntarily from Mirnasiri.  *See* Opp. at 4 ("investigators in early April 2017 *subpoenaed phone records* for Mirnasiri"); Opp. at 5, n.4 (representing that it had produced "*subpoena responses*", that is, the null responses); Opp. at 14 ("the fact that [the government] *did not send subpoenas* until April 2017 is a red herring").  The defense has demanded that the government confirm that it was never in possession of Mirnasiri's phone records until May 17, 2018.  If it is unable to do so, then this will confirm that the government deliberately withheld critical evidence from the defense, to the great detriment of the defense's ability to prepare for trial.

## VII.   The Government Has No Adequate Response to Its Many Misrepresentations to this Court

The government's attempts to sweep its several misrepresentations to the Court under the rug are unavailing.  As discussed above, its doubled-down misrepresentation of when the investigation into Mr. DeCicco began in this case continues to be untrue.  *See* Section I; *see also* Mem. at 20-22.  Even setting aside the recording equipment that may have been provided to Mirnasiri during this time, the government never even attempted to address how SA Chizmadia's supposed game of a 4-month long "phone tag" happened to be closely interspersed amongst Mirnasiri's communications with Mr. DeCicco, or involve several calls over 5 minutes, or involve an in-person meeting.  *See* Opp. at 12-14.

The government's misrepresentation that it was the FBI that reached out to Mirnasiri and not the other way around is given a cursory explanation in a footnote that Mirnasiri was obviously "invited" to call SA Chizmadia because he could not have done so "unless someone from SPD or the FBI provided it to him and thereby invited the call."  *See* Opp. at 3 at n.3.  But unless this assertion is substantiated by concrete evidence—which it is not—as a hypothesis it simply does not stand up to basic scrutiny:  Mirnasiri could have had SA Chizmadia's number in his possession from prior contact as an FBI source; alternatively he could been provided with SA Chizmadia's number from a third party or mutual acquaintance not affiliated with the SPD or FBI.  And whatever the true scenario, it is undisputed that Mirnasiri ***called the FBI first*** on August 27 and 28, 2014, even before the Saugus Police Department referred the case to SA Chizmadia on September 2, 2014.  The government's written representation that the FBI "reached out to CW-1 about the incident, not the other way around"[13] and, moreover that the FBI did so *after* the SPD referred the case to the FBI, is doubly untrue.

The government does not even attempt to explain why it misrepresented to the Court that Mr. DeCicco and Mirnasiri did not talk to each other after the flower incident in August 2014. The government's consciousness that this was not a true statement was eminently apparent at the May 23, 2018 hearing, when the government could not help by interrupt defense counsel's presentation to protest, and then later admitted—after being confronted by the transcript—that what the government had stated was not truly what the government had meant.

---

[13] Tellingly, the government attempts to backtrack from its written representation, characterizing it as a statement about "how this case made its way to the FBI." Opp. at 3, n.3.  Not only does this not help the government's position in the slightest, it is also not true.  The statement the government wrote reads as follows, "it was the Saugus Police who referred the case to the FBI, not CW-1 . . . ***The FBI subsequently reached out to CW-1 about the incident, not the other way around***." Dkt. No. 87 at 16 (citations omitted, emphasis in original)

And now, the government's latest productions continue to reveal new misrepresentations to which the defense had formerly been unaware.  For example, the government's late production of text messages between SA Chizmadia and Mirnasiri has revealed that its earlier representation that it had completed review of Mirnasiri's SMS and MMS messages and had nothing relevant, exculpatory, or impeaching to produce was untrue.  The government's representation that it was "preposterous" for Mirnasiri to attempt to record a conversation with Mr. DeCicco following the assault has also been proven to be untrue by its May 25, 2018 disclosure that Mirnasiri was provided with recording equipment—if SA Chizmadia's memory serves—in February 2015.  Quite simply, it is clear that the government's representations, when made in an attempt to bolster its case against Mr. DeCicco, cannot no longer be relied upon.

## VIII.   The Government's Blithe Assertion of No Prejudice Ignores the Prejudice Mr. DeCicco Has Suffered for the Past 14 Months in Pretrial Detention

The government makes much of the fact of the defense's vigorous response to its discovery of government misconduct, stating that it proves that there was no "actual prejudice" because the defense was able to (1) analyze the phone records and prepare a PowerPoint presentation for the May 23, 2018 hearing; and (2) prepare a 42-page brief in support of its Motion to Dismiss the Indictment.[14]  Opp. at 15, 16.  But it is indisputable that, since the defense's filing of that brief, the government has continued to produce new exculpatory and impeachment information to the defense, and still has additional materials and information to produce, some of which (such as the information regarding the recording equipment provided to Mirnasiri) is very material to Mr. DeCicco's defense.  *See* Section V, *supra*.

---

[14] The fact of the matter is that the defense did not realize that SA Chizmadia's phone number was on Mirnasiri's phone records until around 10 p.m. on May 22, 2018, conducted its analysis overnight, and did not even begin to prepare the PowerPoint presentation until the morning of May 23, 2018.  The defense similarly worked overnight to prepare its Motion to Dismiss the Indictment and supporting briefing, and even now continues to discover new information that it would have included in the brief had the government made them before its filing deadline.

The government insists that there is no "actual prejudice," and that the defense should bear the brunt of these late disclosures and seek a continuance, instead of dismissal.  Opp. at 14.  But Mr. DeCicco is detained pretrial, something that the government seems to blithely ignore in arguing no prejudice.  And Mr. DeCicco is detained pretrial—at least in part—as a result of the government's misrepresentations.  Any continuance that the defense needs to prepare for trial with these new discoveries as a result of the government's untimely disclosures only serves to prejudice Mr. DeCicco further.  In essence, the government is asking the Court to condone its destruction of evidence, serial misrepresentations, continued untimely disclosures, and complete lack of contrition or acceptance of responsibility, and preserve its tainted prosecution against Mr. DeCicco so it can keep him behind bars while his counsel scrambles to understand the facts now that the government's misrepresentations have been brought to light—and in the face of unconscionable government conduct.  The Court should not condone such outrageous behavior.

## **CONCLUSION**

For these reasons, the motion to dismiss the indictment for government misconduct should be granted.

Respectfully submitted,

GARY P. DECICCO

By his attorneys,

 /s/ Thomas C. Frongillo
Thomas C. Frongillo (BBO# 180690)
Caroline K. Simons (BBO# 680827)
Jessica L. Perry (BBO# 696392)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, Massachusetts 02210
frongillo@fr.com
simons@fr.com
jperry@fr.com
TEL: (617) 542-5070
FAX: (617) 542-8906

James J. Cipoletta (BBO# 084260)
Law Offices of James J. Cipoletta
Citizens Bank Building
385 Broadway Suite 307
Revere, Massachusetts 02151
jim@cipoletta.com
Tel: (781) 289-7777
Dated: May 30, 2018                    Fax: (781) 289-9468

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed on May 30, 2018 through the CM/ECF system and will be served electronically to registered CM/ECF participants as identified on the Notice of Electronic Filing.

 /s/ Thomas C. Frongillo
Thomas C. Frongillo